McKinney, J.,
delivered the opinion of the Court:
The complainant who is a married woman, wife of Oliver H. Coppedge, seeks by this bill to set aside an assignment of her portion by inheritance, of the estate of her deceased mother, Elizabeth Lynch; and to have the same settled upon her, to her separate *579 use and benefit. Elizabeth Lynch died intestate in Henderson county, Tennessee, in the year 1848, leaving several children and an estate of considerable value, subject to distribution amongst them.
The administrator filed a bill in Chancery, for an account of the advancements, and an adjustment of the equities of the several distributees of said estate. By a decree made in said cause, at the June Term, 1852, of the Ghaneery Court at Lexington, the respective portions of the several distributees were ascertained. The shai’e of the complainant was ascertained to be, four slaves, valued at $ 1,200, and the sum of $291.58 in cash; also the further sum of about $150 in money, which had accrued from the hire of the slaves pending the suit, making the aggregate value of complainant’s distributive portion about the sum of $1,641.
During the pendency of the above suit, and at a, stage in the progress of the proceedings, when nothing had been determined in respect to the extent of the right of the complainant to a distributive portion of said estate; .and when this matter, as it seems, in the opinion of the administrator, the complainant, and perhaps all the other parties in interest, was supposed to be involved in some uncertainty, namely, on the 18th of February, 1851, the defendant, Threadgill, who resided in Henderson county, where the litigation was pending, went to Mississippi, the residence of Coppedge and wife, and procured from them an instrument, by which, for the consideration of five hundred dollars, they jointly sold, released and relinquished to said Threadgill, “ all their right, title and interest in and to *580 the estate of the said Elizabeth Lynch.” The instrument is in the form of an indenture; and the acknowledgment of the execution thereof by said Cop-pedge and wife, was taken the 19th of May, 1851, by the commissioner of the State of Tennessee, appointed for the State of Mississippi, pursuant to the Act of 1839, ch. 26, and it was registered in Henderson county, 3d June, 1851.
This bill was filed by the complainant, on the 14th of December, 1852, after the precise value of the complainant’s interest in the estate had been finally ascertained and declared by a decree of the Court; and after the defendant Thread gill had filed a bill against the administrator, asserting his right as assignee to the portion of the complainant, in vii*tue of the instrument before mentioned; but before said defendant had reduced into possession any part of said distributive portion, and the same was impounded and remains under the control of the Court, to await the determination of the present case.
The bill seeks to avoid the assignment to defendant, as well on the ground of fraud and undue advantage, as on the ground that it is not binding on the complainant. It is alleged and proved, that the husband of complainant is an intemperate, improvident, imbecile man; in consequence of which, the management of the business and affairs of the family was cast pretty much upon the complainant. It is further shown, that at the time of the transfer before mentioned, to the defendant, the husband of complainant was insolvent, and the family were without a home. From the whole case it is manifest, that the com *581 plainant was induced to join in the assignment under the belief, superinduced, in part, at least, by the representations of the defendant, that it was doubtful whether she would ever be able to realize anything of consequence from said estate. In the bill filed by the administrator, to have the advancements collated, it seems to have been erroneously assumed, that the complainant was liable to account, as an advancement, for two slaves conveyed by Elizabeth Lynch, in her lifetime,- to the children of complainant, reserving the use and services of said slaves to the complainant, during her life; and that, in this way her distributive portion might be diminished to a small amount. And in addition, it is shown, that at the time of procuring said assignment, and for some time before, the defend ant was the agent of complainant and her husband, to attend to and protect their interests in the suit before referred to; and from this relation, had means of acquiring knowledge of the facts, which they did not possess. It is further established, that at the time of making the assignment, the defendant represented to the complainant that the administrator of the estate had become hostile to her; and that he had pursued such a course of mal-administration in his management of the business of the estate, as to render it doubtful whether complainant would ever be able to receive anything more from said estate; which representation, from the proof in this record, seems to have had no foundation in truth. Upon the hearing, the Chancellor decreed for the complainant, and vested the property in a trustee for her separate use, to the exclusion of the husband’s marital right. The com *582 plainant’s counsel insists that the decree is correct, upon two grounds: First, that upon the facts, the assignment is vitiated by fraud; and secondly, that by law, the assignment is inoperative and void, as against the complainant; because her assent thereto' has not been manifested in the only mode in which, by the established rule in equity, her equity to a settlement out of the distributive portion of her mother’s estate could be defeated. Both of these positions are denied by the defendant’s counsel.
The equitable right of a married woman to a provision out of her own property or fortune before the husband or his assignee has reduced it into possession, is, in the language of the books, the mere creature of, and rests alone upon the peculiar’ doctrine of a Court of Equity. 10 Ves. 90 ; 13 Ves. 6. This equitable right may be waived, but in order to guard against fraud, coercion, or undue influence, it was deemed expedient to interpose certain forms, the observance of which has been uniformly required in order to defeat it.
The examination of the wife must take place, either before the Court in which the cause is depending, or before commissioners specially appointed by that Court for the purpose.—Clancey on Rights, 537-8 2 Dan’l. Chan. Prac. 116; 10 Humph. 200. Upon this doctrine the case of Wilkes vs. Fitzpatrick, (I Humph. 54,) was decided. In ' that case it was held that a transfer by husband and wife, by an instrument under seal, of the wife’s interest under the will of her deceased father, could have no obligatory force upon the wife, because it was made without those *583 solemnities required by a Court of Equity in such cases; and that to bind the wife, she must be examined in Court, touching her consent to such transfer. The principle of this case has been recognized in subsequent cases, and is the settled rule of this Court.
But it is argued, by the defendant’s counsel, that this rule is changed by the act of 1839, ch. 26, § 6. That act provides various methods for the probate of deeds, and other instruments executed beyond the limits of the United States, or in the several States of the Union. The language of the act is very comprehensive : It embraces “ deeds, powers of attorney, and other instruments for the transfer or conveyance of property or effects, real or personal, or appointing agents to transact any business whatever, and all other deeds, of every description.” And the sixth section provides, that where any feme covert shall be a party to any of said instruments, whether for the convey-, anee of “ real estate,” or “ for other purposes,” her privy examination and acknowledgment may be taken in either of the modes prescribed in the act; and when so taken, and certified and registered, “ shall have full force and effect to pass the title, or confer the powers, intended to be conveyed.” But, notwithstanding the comprehensiveness of this statute, it has no reference to, nor does it effect the peculiar rule of a Court of Equity under consideration; and perhaps the practical wisdom, and vital importance of the rule, will be sufficient to prevent the Legislature from ever taking in hand to change it.
This conclusion, as to the legal effect of the assignment, is decisive of the case, and renders it unne *584 cessary to enter into a discussion of- the facts, with a view to • the question of fraud. It may be observed, however, that if it were necessary to consider that question; upon a view of the whole case, the nature of the interest contracted for, the condition of the complainant, and the surrounding circumstances, the relation of the defendant at the time, and his misrepresentations in respect to material facts assumed to be within his knowledge, and of the truth of which the complainant was ignorant; it would, perhaps, be impossible to avoid the conclusion, that the transaction was utterly null and void on the ground of fraud.
It was further insisted, however, by the defendant’s counsel, before the Chancellor, and it is insisted here, likewise, that although the assignment may be invalid upon both the grounds assumed, still the defendant is entitled to have refunded the five hundred dollars, paid as a consideration therefor. The Chancellor held otherwise.
The proof shows very clearly, that with the money received from the defendant, the complainant made a highly advantageous purchase of a tract of land in Mississippi, which has greatly increased in value, and of which she and her husband are enjoying the possession and profits. It is contended, however, that' the defendant' is precluded from this relief on the ■ground .of fraud. Upon the authorities, this is a question of no little difficulty. If the defendant were here in the attitude of complainant, seeking the active interposition of the Court, the objection would be unanswerable. But, it seems to us, that the principle, that a party seeking equity, must do equity, applies *585 in this case; and that, inasmuch as the complainant received, and is in the full enjoyment of the benefit of the money advanced by the defendant, she is bound, on the most obvious grounds of reason and justice, notwithstanding the coverture, to refund the money upon the cancellation of the contract; and the decree of the Chancellor will be modified accordingly. •
But no final decree can be renderecP in the present state of the case, because the husband of the complainant, whose marital right is sought to be cut off, is not a party. This objection can be obviated, how-, ever, by remanding the case to the Chancery Court, with leave to amend by making him*a,..'party defendant; and it will be so ordered.